Filed 6/10/16  P. v. Frias CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H040691 |
| Plaintiff and Respondent, | (Monterey County Super. Ct. No. SS13051284) |
| v. | |
| GREGORIO RICO FRIAS, | |
| Defendant and Appellant. | |

In advance of trial, defendant Gregorio Rico Frias entered a no contest plea to a misdemeanor charge of misappropriating lost property.  (Pen. Code, § 485, count 3.)[1]

---

[1] Unspecified section references are to the Penal Code.

Defendant was originally charged in three counts with commercial burglary (§ 459, count 1), petty theft of meat from a market with five priors (§§ 666, 484, subd. (a), count 2), and misappropriation of lost property (§ 485, count 3).  Count 3 pertained to defendant's possession of other people's personal property when he was arrested following the meat theft.

The complaint also alleged various prior convictions and prison terms:  one serious felony conviction in 2001 for criminal threats (§ 1170.12, subd. (c)(1)); five theft-related imprisonments after a 1987 conviction of possession of stolen property (§ 496, subd. (a)), 1993 and 1994 convictions of petty thefts with a prior (§§ 666, 484, subd. (a)), a 1995 conviction of second degree burglary (§§ 459-460) , and a 2011 conviction of vehicle theft (Veh. Code, § 10851); and service of five separate prison terms (§ 667.5, subd. (b)) following the 1987 possession conviction and also a 1988 conviction of escape while charged with a felony, the 1995 burglary conviction, a 1997 conviction of

*(Continued)*

After a jury trial, defendant was convicted of petty theft for his role in stealing about $70 worth of meat from a Salinas market.  (§ 484, subd. (a), count 2).  When the jury was unable to agree on a charge of commercial burglary after further deliberations (§ 459, count 1), the court declared a mistrial as to that charge.

In bifurcated proceedings, the court found defendant to have a 2001 serious felony conviction for criminal threats (§ 1170.12, subd. (c)(1)) and to have served five separate prison terms (§ 667.5, subd. (b)) following a 1987 conviction of possession of stolen property and a 1988 conviction of escape while charged with a felony, a 1995 conviction of second degree burglary, a 1997 conviction of possession of a controlled substance, 2001 convictions of criminal threats and attempted burglary, and a 2004 conviction in Nevada of possession of methamphetamine for sale.  The court also found that defendant had three theft-related imprisonments (§ 666), first following the 1987 conviction, second following a 1994 conviction of misdemeanor petty theft with a prior, and third following a 2011 misdemeanor vehicle theft conviction.  Two other theft-related convictions were alleged but not proved.

At sentencing, the trial court denied defendant's requests to strike his strike conviction and to reduce his conviction of petty theft with a prior to a misdemeanor. Then the court imposed a prison sentence of nine years, consisting of the middle term of two years for petty theft with a prior (count 2), doubled due to defendant's prior strike, and a total of five consecutive one-year terms for each of defendant's five prior prison terms.  The court imposed no additional time for count 3.  "In regards to fines, there is a $2,700 restitution fine.  An additional $2,700 fine is imposed but suspended pending successful completion of parole."  The court imposed other fees.

---

possession of a controlled substance, 2001 convictions of criminal threats and attempted burglary, and a 2004 conviction in Nevada of possession of methamphetamine for sale.

2

On appeal, defendant faults his trial counsel for failing to object three times, (1) to testimony about a warrant for defendant, (2) to part of the prosecutor's closing argument, and (3) to imposition of a restitution fine arguably based on an inapplicable $300 minimum fine. Defendant also asserts that the pattern instruction describing liability for aiding and abetting is flawed in lowering the threshold for conviction. The facts relevant to these contentions will be summarized in our analysis. For the reasons stated below, we will order the restitution fine recalculated to a total of $2,520 based on a minimum fine of $280 and will affirm the judgment as so modified.

## I. TRIAL EVIDENCE

The Santa Fe Market (Market) in Salinas is a Hispanic specialty store. The Market has two entrances and many surveillance cameras that are constantly recording only video, not audio, on a hard drive. Three recordings made on May 27, 2013 were introduced in evidence at trial. Defendant did not testify.

The first video clip showed defendant entering the store.[2] A woman dressed in white and carrying an oversized brown purse or bag came through the same entrance right behind defendant.

In order to buy meat at the Market's meat and deli counter, a customer has to place an order describing the kind and amount of meat. On May 27, defendant ordered about 10 pounds of flat, regular meat and three pounds of seasoned meat from Ruth Perea, a Market clerk. She recalled that he kept looking nervously from side to side while placing his order. His order totaled about $70 worth of meat.

---

[2] We need not view the videos to decide the issues raised in this appeal. For example, we need not determine whether defendant was "pushing a shopping cart" as he entered the store, as stated by the Attorney General. We will rely on the prosecutor's characterizations of the video clips during jury argument to the extent they went uncontradicted by the defense argument.

The second video clip showed defendant with the packaged meat in his cart meet up in an aisle of the store with the woman in white, who was also pushing a cart. The woman took the meat from defendant's cart and put it into her large purse, while defendant transferred some items from his cart into hers. During the process the woman looked over her shoulder. When the woman was finished loading the meat into her purse, she and defendant separated.

The third video clip showed the woman in white leaving the Market carrying her bag. She walked out without paying for the meat.

As the woman left with a large bag, the store manager suspected a theft from the store. He and a cashier tried to stop her, but she screamed for help and ran away. The store manager then informed the store's owner, Enrique Mendoza, about his suspicions. Mendoza immediately checked the surveillance videos to see what the woman had done inside the store and observed her interaction with defendant.

Defendant walked up to a cashier with a cart and asked her to hold his items. He said he was going out to retrieve his Electronic Benefit Transfer (EBT) card, which he had forgotten. He left the store.

The store owner and manager went looking for defendant and found him, looking somewhat lost, standing outside the store. They detained him and called the police.

Salinas Police Officer Gavin McVeigh and his partner responded to the call from the Market a little after 4 p.m. on May 27. McVeigh spoke with the owner in an employee break room where defendant was detained by a couple of store employees. While the officer was talking with the owner, defendant volunteered that: he was not involved in the theft; he did not know the woman who took items out of his cart; he tried to stop her from taking his meat order.

McVeigh viewed some of the surveillance videos in the store. From the hours of videos recorded from many surveillance cameras, the store owner selected what he considered the best evidence of what occurred and gave them to the officer.

4

Officer McVeigh took defendant into custody.  A search of defendant revealed he had no means to pay for any items.

The woman was not arrested  and the meat was not recovered.

## II.  JURY INSTRUCTIONS AND DELIBERATION

The court gave the jury the following instructions, among others.  Prior to testimony, the jury was instructed in terms of CALCRIM No. 100, "After the People present their evidence, the defense may also present evidence, but is not required to do so.  Because he is presumed innocent, the defendant does not have to prove that he is not guilty."  The jury was also instructed before testimony about the presumption of innocence and the requirement that the prosecution prove guilt beyond a reasonable doubt.  (CALCRIM No. 220.)

After trial, the jury was instructed that defendant was charged with burglary in count 1 and petty theft in count 2.  Specific intent is an element of each crime. (CALCRIM No. 251.)  The jury was instructed about the elements of burglary in terms of CALCRIM No. 1700 and about the elements of petty theft by larceny in terms of CALCRIM No. 1800.

The jury was instructed about proving intent by circumstantial evidence in terms of CALCRIM No. 225.  "An intent may be proved by circumstantial evidence.  Before you may rely on circumstantial evidence to conclude that a fact necessary to find the defendant guilty has been proved, you must be convinced that the People have proved each fact essential to that conclusion beyond a reasonable doubt.

"Also, before you may rely on circumstantial evidence to conclude that the defendant had the required intent, you must be convinced that the only reasonable conclusion supported by the circumstantial evidence is that the defendant had the required intent.

"If you can draw two or more reasonable conclusions from the circumstantial evidence, and one of those reasonable conclusions supports a finding that the defendant

5

did have the required intent and another reasonable conclusion supports a finding that the defendant did not, you must conclude that the required intent was not proved by the circumstantial evidence. [¶] However, when considering circumstantial evidence, you must accept only reasonable conclusions and reject any that are unreasonable."

The jury was again given the standard instruction about the presumption of innocence and the requirement that the prosecution prove guilt beyond a reasonable doubt. (CALCRIM No. 220.) We quote the aiding and abetting instructions below where relevant (in Part III.B).

"You must follow the law as I explain it to you, even if you disagree with it. If you believe that the attorneys' comments on the law conflict with my instructions, you must follow my instructions." (CALCRIM No. 200.)

The jury retired to deliberate at 4:34 p.m. on October 15, 2013 after trial testimony was presented the same day. The jury returned to the courtroom after selecting a foreperson and decided to resume deliberations the next morning at 8:30 a.m. The next day, the jury took a one-hour lunch break and returned with a verdict on the petty theft charge only shortly after 2 p.m.

The court asked if the jurors could arrive at a verdict on the burglary charge with continued deliberations and instructed them to try in terms of CALCRIM No. 3551. During further deliberation on the burglary charge, the jurors sent two notes to the court regarding when the intent to aid and abet burglary must be formed. The court answered the notes in writing. At 4:38 p.m., the court polled the jurors individually to confirm they were hopelessly deadlocked on count 1. The court declared a mistrial as to count 1 only and accepted the verdict of guilt on count 2.

### III. ANALYSIS

#### A. *INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL*

On appeal defendant contends that his trial counsel's failure to object on three occasions amounted to unconstitutional ineffectiveness. First, defense counsel should

6

have objected to trial testimony about a warrant for defendant.  Second, counsel should have objected to part of the prosecutor's closing argument.  Third, counsel should have objected to the amount of the restitution fine imposed at sentencing.

The ingredients of establishing that criminal trial counsel was constitutionally deficient are well known.  First, counsel's conduct must fall outside the wide range of reasonable professional assistance.  Second, the defendant must establish prejudice resulting from counsel's errors or omissions, namely, that there is a reasonable probability of a more favorable outcome in the absence of counsel's errors.  A probability is reasonable when it is sufficient to undermine confidence in the outcome.  (*Strickland v. Washington* (1984) 466 U.S. 668, 694; *People v. Bolin* (1998) 18 Cal.4th 297, 333; *People v. Vines* (2011) 51 Cal.4th 830, 875.)

## 1.  Testimony about a Warrant for Defendant

Defendant asserts on appeal that he was prejudiced because Officer McVeigh stated that he arrested defendant in the Market on May 27, 2013 pursuant to a warrant.

Specifically, on direct examination, the prosecutor asked, "You arrested him for what?" and McVeigh answered, "He had a warrant at that time."

Without objection, McVeigh's direct examination continued.  "Well, did you process his arrest for a theft-related offense?"  "I did."  "For his activity in that store that day?"  "Correct."  "And that was based on the information you obtained from the personnel at the store?"  "Correct.  Mr. Mendoza[, the store owner,] wished he be arrested for the theft."

On appeal defendant contends that the warrant reference violated the court's in limine ruling granting defendant's written motion to "exclude evidence of prior bad acts or prior convictions."  (Capitalization omitted.)  Because there was no objection to this testimony at trial, defendant portrays his appointed counsel as constitutionally ineffective.

" '[D]eciding whether to object is inherently tactical, and the failure to object will rarely establish ineffective assistance.' "  (*People v. Lopez* (2008) 42 Cal.4th 960, 972,

7

quoting *People v. Hillhouse* (2002) 27 Cal.4th 469, 502.) On the other hand, "One of the principal tasks of a defense attorney is to attempt to protect his or her client from the admission of evidence that is more prejudicial than probative, and that obligation clearly applies to efforts made by the prosecution to introduce evidence of prior crimes or acts of violence alleged to have been committed by a defendant, when such crimes are unrelated to the charged offense." (*In re Jones* (1996) 13 Cal.4th 552, 581-582.)

The Attorney General speculates that defense counsel made a knowing "tactical" decision to not object to the "passing reference" to defendant's warrant. "Any objection to the testimony would have drawn the jury's attention to it. By letting the prosecution's questioning continue without interruption, the jury's attention was kept on the prosecution's line of questions, which immediately returned to the facts of the case at hand." Defendant responds, as "counsel had already vigorously fought to exclude that very same evidence during the motions in limine and obtained the ruling to keep the evidence out; there could be no tactical explanation for changing his mind about putting it in front of the jury midway through the trial."

Appellate courts have occasionally justified a defense omission to object to certain evidence as based on the tactic of avoiding focusing the jury's attention on the unfavorable evidence. (E.g., *People v. Harris* (2008) 43 Cal.4th 1269, 1290.) However, we need not speculate further about defense counsel's unexpressed thoughts.

"[W]hen considering a claim of ineffective assistance of counsel, 'a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.' (*Strickland v. Washington* [, *supra*,] 466 U.S. 668, 697.) A defendant must prove prejudice that is a ' "demonstrable reality," not simply speculation.' [Citations.]" (*People v. Fairbank* (1997) 16 Cal.4th 1223, 1241.)

8

Cases have considered the prejudicial impact of evidence of a defendant's unrelated arrests. In *People v. Anderson* (1978) 20 Cal.3d 647, after being charged with murder, codefendants were convicted of voluntary manslaughter. (*Id.* at pp. 649-650.) During cross-examination of one of the two codefendants, the prosecutor elicited that the codefendants had been arrested together twice before on unspecified charges. (*Id.* at p. 650.) The issue on appeal was not ineffective assistance, because defense counsel had objected to the evidence of the accused's prior arrests. (*Ibid.*) The Supreme Court pointed out that evidence of prior arrests can easily be prejudicial in showing a defendant's bad character. (*Id.* at p. 651.) In that case, the arrest evidence was deemed prejudicial because "[t]he jury took several days of deliberation to reach its verdict," and "the record reveals a close and difficult credibility determination for the jury which had to weigh divergent and conflicting factual recitations describing the fight." (*Ibid.*)

*People v. Parsons* (1984) 156 Cal.App.3d 1165 explained that the likely impact of objectionable evidence depends on the state of the unobjectionable evidence. In that case, a police officer testified that the defendant had been "arrested for auto burglary in addition to the grand theft auto charge. The trial court had already ruled that such evidence was inadmissible as irrelevant." (*Id.* at p. 1169.) There was a defense objection to the arrest testimony and the jury was admonished to disregard the evidence. (*Ibid.*)

In determining whether the prosecutorial misconduct was prejudicial, the court stated: " 'Improper evidence of prior offense results in reversal only where the appellate court's review of the trial record reveals a closely balanced state of the evidence. [Citations.] The same error, viewed in the light of a record which points convincingly to guilt, is consistently regarded as nonprejudicial . . . .' [Citation.]" (*People v. Parsons*, *supra*, 156 Cal.App.3d at p. 1171.) In light of "convincing evidence of guilt," the appellate court concluded that "the prosecutor's misconduct was harmless." (*Id.* at p. 1172.) Having reached that conclusion, it was easy for the appellate court to further conclude, "Given the clear weight of evidence in favor of appellant's guilt, there is no

9

indication that a determination more favorable to the appellant would have resulted had the [public defender] zealously objected to evidence implicating the appellant in crimes not charged in the information." (*Id.* at p. 1173.)

Defendant claims he was prejudiced by trial counsel's failure to object to Officer McVeigh's vague reference to an outstanding warrant. Though the Attorney General does not respond to this argument, we are not convinced by it. Defendant contends that "[t]he jury's decision ultimately was based on which version of the facts it believed," and the deliberations established that "the case was close" as "[t]he jury twice sent notes to the court asking to clarify instructions, and ultimately could not reach a verdict on the count one commercial burglary charge, indicating that jurors did not find the prosecution's evidence to be overwhelming."

However, in evidence was a videotape of defendant's coordinated actions with the woman who left the store with the meat he had ordered despite having no means of paying for it. The two were proximate in location and time in entering the store and they met up in the store after defendant had put a meat order in his shopping cart. The woman proceeded to take the meat from defendant's cart and place it in her purse or bag without his protest or call for assistance. Defendant did not attempt to replace his meat order at the meat counter, instead leaving the store shortly after the woman did without making a purchase. From the jury's notes during deliberations, they were unsure about the burglary charge, not the petty theft charge. The notes, which were not sent until the jury had reached a verdict on the petty theft charge, asked for clarification of when the intent to aid and abet burglary must be formed. The jurors ultimately were unable to agree on that charge.

Without defense counsel's objection to this testimony, the prosecutor quickly steered Officer McVeigh back to testifying that defendant was arrested for his activity in the store that day. There was no reference to a warrant in counsel's jury arguments. They both focused on what the videotapes showed. If the isolated and vague testimonial

10

reference to a warrant was so prejudicial, it would seem the jury would have convicted defendant of the burglary charge as well as petty theft.  We conclude that there is no reasonable probability that defendant would have obtained a more favorable verdict had trial counsel objected to this testimony.

## 2.  Prosecutor's Argument about Reasonable Inferences

On appeal defendant contends that trial counsel should have objected to the following italicized portion of the prosecutor's closing argument.

In opening argument to the jury, the prosecutor acknowledged that "[e]ach [element of a crime] must be proved beyond a reasonable doubt."

Defense counsel's jury argument began:  "The People have to prove this case beyond a reasonable doubt.  That means that their explanation for what happened has to be the only reasonable explanation for what happened.  I think if we look at the evidence, I think that there is other reasonable explanations for what happened here [*sic*].  [¶]  The main item of evidence is, of course, the video.  I encourage you to look at the video."  After reviewing the video, defense counsel reiterated, "based upon the evidence presented, I think the People have failed to prove beyond a reasonable doubt that their explanation is the only explanation that makes reasonable sense."

The prosecutor's closing argument began as follows.  "Counsel has made one argument and that's on his idea of reasonable doubt.  The burden is not proof beyond all possible doubt.  Anything dependent upon human affairs is open to some possible or imaginary doubt.  That's not the People's burden.  [¶]  But what I ask you to do is make the reasonable inference from all the evidence you've received.  And if you do that and if you listen as I just did following the defendant's—defense counsel's arguments, *you'll find that the set of facts don't come up with a reasonable inference of innocence if you go through this*."  (Italics added.)

Without objection, the prosecutor proceeded in argument to review the video evidence, contending that defense counsel had proposed the following series of chance

11

occurrences. Defendant entered the store in close proximity to the woman in white. She later removed the meat from his cart. Her cart was empty. He did not have his electronic benefits card at the time. The prosecutor concluded argument by saying, "So look at all the evidence and the circumstances and draw the reasonable inference. If you do that, you'll find only one reasonable inference and that points to his acting in [concert] with this woman in white with a clear intent to steal and that's what they did."

The California Supreme Court has reiterated: "Advocates are given significant leeway in discussing the legal and factual merits of a case during argument. [Citation.] However, 'it is improper for the prosecutor to misstate the law generally [citation], and particularly to attempt to absolve the prosecution from its . . . obligation to overcome reasonable doubt on all elements [citation].' " (*People v. Centeno* (2014) 60 Cal.4th 659, 666 (*Centeno*), quoting *People v. Marshall* (1996) 13 Cal.4th 799, 831, and citing *People v. Hill* (1998) 17 Cal.4th 800, 829 (*Hill*).) "It is . . . error to state that 'a defendant has a duty or burden to produce evidence, or a duty or burden to prove his or her innocence.' [Citations.] It is, and remains, the prosecutor's burden to prove the case. If the defense chooses to produce evidence, the jury must, of course, consider it as part of the complete record before it. To that end, the prosecution can surely point out that interpretations proffered by the defense are neither reasonable nor credible." (*Centeno, supra*, at p. 673.)

In *Hill*, *supra*, 17 Cal.4th 800, on which defendant relies, in rebuttal argument, the prosecutor asserted about reasonable doubt, " 'it must be reasonable. It's not all possible doubt. Actually, very simply, it means, you know, you have to have a reason for this doubt. *There has to be some evidence on which to base a doubt.*' " (*Id.* at p. 831.) The Supreme Court concluded that the prosecutor had misstated the law. "Although the question arguably is close, we conclude it is reasonably likely Morton's comments, taken in context, were understood by the jury to mean defendant had the burden of producing evidence to demonstrate a reasonable doubt of his guilt." (*Id.* at p. 832.) In *Hill*, the

12

Supreme Court identified many instances of prosecutorial misconduct during the guilt phase of the trial in addition to this closing argument. (*Id.* at pp. 835-836.)

We do not understand the comment challenged by defendant here as of the same nature as the statement in *Hill*. In *Centeno*, the court acknowledged that "[i]t is permissible to argue that the jury may reject impossible or unreasonable interpretations of the evidence and to so characterize a defense theory." (*Centeno*, *supra*, 60 Cal.4th at p. 672.) That is all that occurred in this case.

Defendant did not testify and the defense did not call any witnesses. The defense strategy was to rely on defendant's statement to the police and to raise questions about the prosecution's evidence. In argument, defense counsel invited the jury to view the video-recordings of defendant in the market and offered what he called "other reasonable explanations for what happened here."

Specifically, when defendant met the woman in the aisle, "If you look at it, there's nothing to contradict Mr. Frias's statement to the police that he did not know this woman, she took the item from his cart and put it in hers. That's exactly what happened. There was no act of coordination if you look at the video. [¶] After she takes the items, there's no indication that he knew that she was going to steal the item. As far as he knew, she was probably going to buy it as far as he knew. There's no evidence to show that he didn't know that." After reviewing the evidence, defense counsel asserted that "the People have failed to prove beyond a reasonable doubt that their explanation is the only explanation that makes reasonable sense."

The prosecutor's response in closing argument, though awkwardly phrased, was essentially that the only reasonable interpretation of the video-recordings was that defendant aided and abetted the woman in stealing the meat from the market. Going through defense counsel's arguments about the evidence, "you'll find that the set of facts don't come up with a reasonable inference of innocence . . . ." In other words, defense counsel's implication that defendant's conduct in the store was innocent found no support

13

in reasonable inferences from the evidence.  It is not misconduct for a prosecutor to argue that the inferences proposed by a defense argument are unreasonable.  "The prosecution has broad discretion to state its views as to what reasonable inferences may and may not be drawn from the evidence." (*People v. Mitcham* (1992) 1 Cal.4th 1027, 1047.)

"When attacking the prosecutor's remarks to the jury, the defendant must show that, '[i]n the context of the whole argument and the instructions' [citation], there was 'a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner.  [Citations.]  In conducting this inquiry, we "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements.  [Citation.]' " (*Centeno*, 60 Cal.4th at p. 667.)

In determining how the jury might have interpreted the prosecutor's comment, we take into consideration instructions the jury had received.  At the outset of trial the jury was instructed that because of the presumption of innocence, defendant was not required to prove he was not guilty.  It was the prosecution's burden to prove guilt beyond a reasonable doubt.  After trial, the jury was instructed to ignore any comments by the attorneys about the law that conflicted with the court's instructions and was again instructed about the prosecution's burden of proof.  In argument, both counsel acknowledged the prosecution's burden of proof.  With these instructions in mind, we see no reasonable likelihood that the jury understood the prosecutor's challenged comment as implying that defendant had any burden to prove his innocence.  Defense counsel was not required to assert a meritless objection to the prosecutor's closing argument.  For the same reasons we conclude that it is unlikely that a juror misunderstood the prosecutor's comment, we would conclude that defendant was not prejudiced by the lack of an objection.  Prejudice is a component of establishing defense counsel's ineffectiveness. An objection would have led to instructions like those already given by the court, which ameliorated the impact of the prosecutor's statement.

### 3. Restitution Fine

The probation report recommended imposing a restitution fine pursuant to the statutory formula in section 1202.4, subdivision (b)(2), namely the amount of $280 times the number of felony counts times the number of years in prison.[3] The report did not recommended any particular sentence. As noted in the introduction, after imposing a nine-year prison sentence, the court imposed a restitution fine of $2,700. As defendant points out, a total of $2,700 would result from multiplying one felony count times nine years times $300. At the time of defendant's crime, May 27, 2013, the minimum restitution fine was $280, not $300.

The minimum restitution fine had been $200 since 1992[4] until Assembly Bill No. 898, enacted in 2011 (Stats. 2011, ch. 358, § 1), scheduled three prospective annual increases. The legislation amended section 1202.4, subdivision (b)(1) to provide that the restitution fine for a felony conviction "shall not be less than two hundred forty dollars ($240) starting on January 1, 2012, two hundred eighty dollars ($280) starting on January 1, 2013, and three hundred dollars ($300) starting on January 1, 2014 . . . ," retaining the same $10,000 upper limit.

This court confronted a similar situation in *People v. Martinez* (2014) 226 Cal.App.4th 1169 (*Martinez*).[5] In that case, the trial court calculated a total restitution fine of $12,300 using the statutory formula and a $280 base fine, as recommended in the

---

[3] "In setting a felony restitution fine, the court may determine the amount of the fine as the product of the minimum fine pursuant to paragraph (1) multiplied by the number of years of imprisonment the defendant is ordered to serve, multiplied by the number of felony counts of which the defendant is convicted." (§ 1202.4, subd. (b)(2).)

[4] Former Gov. Code, § 13967, subd. (a); Stats. 1992, ch. 682, § 4, p. 2922.

[5] Neither side has cited *Martinez*, though it was decided five weeks before the opening brief was filed.

probation report, though the minimum fine at the time of the defendant's crimes was $200. (*Id.* at p. 1188.) We noted that "[t]he prohibition against ex post facto laws applies to restitution fines." (*Id.* at p. 1189.)

We reasoned: "trial counsel failed to object to the trial court's mistaken use of the minimum statutory fine that was in effect at sentencing to calculate appellant's restitution fund fine. We cannot conceive of any tactical reason for counsel's failure to object. On the record before us, given the court's commitment to use the statutory formula . . . , it appears more than likely that the court would have imposed the restitution fund fine using the $200 minimum that was in effect when appellant committed his crimes had counsel raised an objection at the sentencing hearing. Accordingly, we conclude that trial counsel's performance was deficient." (*Martinez, supra,* 226 Cal.App.4th at p. 1190.)

On appeal here, defendant contends that "[t]he court apparently intended to use the statutory minimum as the multiplier, which was $300 in 2014." The Attorney General responds, "The record does not support [defendant]'s claim as the court did not explain how it arrived at the $2,700 restitution fine" and the court made no reference to the statutory formula. The Attorney General offers no explanation for how else the court arrived at that fine amount.

The Attorney General is asking us to conclude that it is sheer coincidence that the $2,700 restitution total imposed by the trial court would result from applying the statutory formula in this case to a $300 minimum fine. This reminds us of defendant's unsuccessful trial argument that he just happened to enter the store when the woman in white did and she just happened to put meat he ordered in her purse. While the trial court did not expressly state an intent to use the minimum fine or the statutory formula, that is the most reasonable interpretation of how the court arrived at the total fine imposed. We adhere to the reasoning in *Martinez*, where we recalculated the total restitution fine based on the applicable minimum fine. (*Martinez, supra*, 226 Cal.App.4th at p. 1190.) $280 for each of nine years is $2,520.

16

## B. AIDING AND ABETTING INSTRUCTION

The jury was instructed about liability for aiding and abetting in terms of CALCRIM Nos. 400 and 401 as follows. "A person may be guilty of a crime in two ways. One, he or she may have directly committed the crime. I will call that person the perpetrator. Two, he or she may have aided and abetted a perpetrator, who directly committed the crime. [¶] A person is guilty of a crime whether he or she committed it personally or aided and abetted the perpetrator." (See CALRIM No. 400.)

"To prove that the defendant is guilty of a crime based on aiding and abetting that crime, the People must prove that: [¶] One, the perpetrator committed the crime; [¶] Two, the defendant knew that the perpetrator intended to committed the crime; [¶] Three, before or during the commission of the crime the defendant intended to aid and abet the perpetrator in committing the crime; [¶] And four, the defendant's words or conduct did, in fact, aid and abet the perpetrator's commission of the crime. [¶] Someone aids and abets a crime if he or she knows of the perpetrator's unlawful purpose and he or she specifically intends to and does, in fact, aid, facilitate, promote, encourage or instigate the perpetrator's commission of that crime.

"If all of these requirements are proved, the defendant does not have to—the defendant does not need to actually have been present when the crime was committed to be guilty as an aider and abettor.

"If you conclude that the defendant was present at the scene of the crime or failed to prevent the crime, you may consider that fact in determining whether the defendant was an aider and abettor. However, the fact that a person is present at the scene of a crime or fails to prevent the crime, does not, by itself, make him or her an aider and abettor." (See CALCRIM No. 401.)

Defendant did not object to these instructions in the trial court. On appeal, however, he contends that "CALCRIM No. 401 impermissibly suggested that two factors in combination, presence and failing to intervene, are sufficient evidence of aiding and

17

abetting." Defendant apparently interprets CALCRIM No. 401 as effectively stating, "While neither fact—defendant's presence at the scene of the crime or his failure to prevent the crime—by itself makes him an aider and abettor, both facts together are sufficient to do so."

The Attorney General asserts that defendant is procedurally barred from challenging this instruction for the first time on appeal. Section 1259 states in part, "The appellate court may also review any instruction given, refused or modified, even though no objection was made thereto in the lower court, if the substantial rights of the defendant were affected thereby." Only if the given instruction did not affect defendant's substantial rights may we conclude that defendant's objection was forfeited, so we reach the merits of his argument without considering whether trial counsel was ineffective for failing to object to this instruction. (Cf. *People v. Johnson* (2015) 60 Cal.4th 966, 993.)

The Attorney General contends that *People v. Stallworth* (2008) 164 Cal.App.4th 1079 rejected a "similar challenge." In that case the defendant argued the CALCRIM No. 401 was "constitutionally deficient because 'it does not explicitly state that mere presence or mere knowledge is insufficient to establish aiding and abetting.'" (*Id.* at p. 1103.) The court rejected the "mere knowledge" argument because CALCRIM No. 401 describes the specific intent required for liability as an aider and abettor. (*Ibid.*) The court also rejected an argument that the instruction should have restated or referenced the prosecution's burden of proof, because the topic was covered by another instruction. (*Id.* at p. 1104.) As defendant asserts, "*Stallworth* did not address whether the instruction could be interpreted to allow the improper aggregation of factors."

Nevertheless, we reject defendant's strained construction of CALCRIM No. 401. In logical form, the current instruction states that neither X nor Y equals Z. That statement is not the logical equivalent of X plus Y equals Z.

CALCRIM No. 401 identifies four abstract elements of establishing liability as an aider and abettor and then cautions a jury not to rely exclusively on two facts commonly

18

involved in an aiding and abetting situation. Contrary to defendant's characterization, this cautionary statement does not purport to be a definition of the fourth element, which is, "the defendant's words or conduct did, in fact, aid and abet the perpetrator's commission of the crime." This part of the instruction was instead intended to restate the law. "[W]hile mere presence alone at the scene of the crime is not sufficient to make the accused a participant, and while he is not necessarily guilty if he does not attempt to prevent the crime through fear, such factors may be circumstances that can be considered by the jury with the other evidence in passing on his guilt or innocence." (*People v. Villa* (1957) 156 Cal.App.2d 128, 134; *People v. Durham* (1969) 70 Cal.2d 171, 181; cf. *People v. Nguyen* (2015) 61 Cal.4th 1015, 1093.)

Defendant contends "[t]he instruction failed to properly communicate to the jury that it needed more evidence than these two combined factors to find that [defendant] aided and abetted the woman in white." "By focusing the jury on these factors, the instruction improperly suggests to a jury it can substitute those factors for the elements of the offense." Contrary to defendant's claim, the Attorney General does not acknowledge this is a correct interpretation of the instruction's final sentence.

We reject defendant's interpretation, while acknowledging the instruction could be improved.[6] The instruction in its entirety adequately informed the jury that they could not convict defendant basely solely on his passivity in the presence of a crime, that aiding and abetting requires more active involvement, including advance knowledge of the

---

[6] The last paragraph of CALCRIM No. 401 could be clarified as follows. "If you conclude <u>either</u> that the defendant was present at the scene of the crime or failed to prevent the crime, you may consider either ~~that~~ fact in determining whether the defendant was an aider and abettor. However, <u>neither fact individually nor both collectively are enough without more to make the defendant</u> ~~the fact that a person is present at the scene of a crime or fails to prevent the crime, does not, by itself, make him or her~~ an aider and abettor." The slight lack of clarity does not rise to the level of a constitutional defect.

19

crime and words or conduct that instigates, encourages, promotes, or facilitates the perpetrator's commission of the crime accompanied by the specific intent to do so. We do not believe that CALCRIM No. 401 is reasonably subject to the misinterpretation proposed by defendant.[7]

## IV. DISPOSITION

The restitution fine imposed pursuant to section 1202.4 must be reduced to $2,520, as must the suspended parole revocation fine imposed pursuant to section 1202.45. The trial court must prepare an amended abstract of judgment and forward it to the Department of Corrections and Rehabilitation. As so modified, the judgment is affirmed.

---

[7] Because we find no error in the instruction, we need not consider whether defendant was prejudiced by the prosecutor exploiting the error. Nevertheless, we note that defendant emphasizes that the prosecutor asserted in opening argument, "He did nothing to stop this woman." Defendant overlooks that this assertion was in response to defendant's statement to the police "that he attempted to tell the woman to leave his stuff alone."

_____
                    RUSHING, P.J.


WE CONCUR:




_____
            PREMO, J.




_____
            MÁRQUEZ, J.




21